IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROLANDO E. MIDDER,<br><br>Defendant. | 8:22CR157<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant's Motion to Suppress (Filing No. 60). An evidentiary hearing regarding the matter was held on March 15, 2023. A transcript has been filed and this motion is ripe for disposition.

For the reasons explained below, the undersigned will recommend that the motion be denied.

## FACTS

FBI Special Agent Amber Mann ("Agent Mann") testified at the evidentiary hearing held in this case. Agent Mann is a member of the FBI's Child Exploitation and Human Trafficking Task Force and has been with the FBI since May of 2019. (TR. 3-4.) Before joining the FBI, Agent Mann was a special agent with the Bureau of Alcohol, Tobacco, and Firearms for nine years. (TR. 3-4; Ex. 1.) As a task force member, Agent Mann handles cases involving human trafficking, sex trafficking of children, child pornography, and child exploitation. (TR. 4.)

Agent Mann testified that she was assigned a case involving an investigation into Defendant. (TR. 4-5.) Agent Mann prepared two affidavits in connection with her investigation.

(TR. 12; Ex. 1; Ex. 2.) These affidavits were received into evidence at the evidentiary hearing. (Ex. 1; Ex. 2.) One of the affidavits was prepared by Agent Mann to secure a criminal complaint and arrest warrant for Defendant. (Ex. 1.) The second affidavit was used to obtain a search warrant for Defendant's phone. (Ex. 2.) These affidavits were prepared on June 27, 2022—following Defendant's arrest which occurred on that same date. (TR. 11-12; TR. 13; Ex. 1; Ex. 2.) Agent Mann testified that all the information Agent Mann included in the affidavits was available to other task force members, who were aware of what was going on in the investigation. (TR. 28-29.) A criminal complaint and arrest warrant were issued on June 28, 2022. ([Filing No. 1](#); [Filing No. 3](#).) A search warrant for Defendant's phone was also issued on that date.

At the evidentiary hearing, Agent Mann testified regarding her investigation into Defendant and the events leading up to Defendant's arrest—much of this information is also contained in Agent Mann's affidavits. (Ex. 1; Ex. 2.) Agent Mann testified that law enforcement received a phone call on June 9, 2022, in which the caller reported that her niece had been sexually assaulted by a man referred to as "Lala," in a hotel room in Sarpy County, Nebraska. (TR. 5; TR. 7-8; Ex. 1.) The minor had informed the caller that Lala was selling her for sex, forced her to have sex with him, and shot her in the back of the neck with drugs while they were having sex. (Ex. 1; Ex. 2.) The caller provided the minor's name and phone number to investigators, and indicated the minor was willing to speak to law enforcement. (TR. 5.) Sarpy County Deputy Amanda Vollmer ("Deputy Vollmer"), who is also a task force officer, called the minor on the phone. (TR. 8; TR. 14-15.) Agent Mann's affidavits indicate that the minor told investigators that she was at a hotel but could not provide her exact location because she was afraid of being killed. (Ex. 1; Ex. 2.) The minor agreed to meet with officers on June 13, 2022. (TR. 8; TR. 14-15; Ex. 1; Ex. 2.)

Agent Mann stated that before the planned meeting time on June 13, 2022, investigators received a call from an Iowa State Trooper and the minor. (TR. 8; TR. 15; Ex. 1; Ex. 2.) The trooper reported he had made a vehicle stop in Council Bluffs, Iowa and the minor was a passenger in the vehicle. (TR. 8; TR. 15.) The driver of the vehicle was identified as Michael Wilson ("Wilson"). (TR. 8; TR. 15; Ex. 1; Ex. 2.) Agent Mann's affidavits state that the minor told the trooper that she needed to speak to investigators. (Ex. 1; Ex. 2.) According to the affidavits, the trooper also advised investigators that the minor said she was Wilson's "client." (Ex. 1; Ex. 2.)

2

Agent Mann testified that she and Deputy Vollmer drove to Iowa to pick up the minor from the parking lot where the vehicle stop had been made. (TR. 15-16.) Agent Mann stated that she had seen pictures of the minor before, but she had never met her and did not know her name. (TR. 21.) When they arrived, Agent Mann and Deputy Vollmer spoke to the minor in the car. (TR. 16.) Agent Mann testified that they decided to take the minor back to the FBI office, so they did not have to speak to her in the parking lot. (TR. 16.) Agent Mann testified that they did not speak to the minor much at the office or get into case specifics there because the minor was complaining of neck pain. (TR. 16.) The officers took the minor to Children's Hospital to be seen by a doctor. (TR. 16; Ex. 1; Ex. 2.) Agent Mann stated that they spoke to the minor a little at the hospital, but that they got most of the minor's statement while they were in the car when she was picked up and as they drove from Iowa to the FBI office. (TR. 16-17.) Agent Mann testified she did not record her conversations with the minor on June 13th. (TR. 17.) Agent Mann further testified that when she met the minor, she did not make any promises or threats to convince the minor to provide a statement. (TR. 11.)

Agent Mann stated in her affidavits that the minor described Defendant, who the minor referred to as "Lala," as violent and that the minor reported that Defendant had raped her. (TR. 11; TR. 23; Ex. 1; Ex. 2.) The minor said Defendant would hit her and had threatened to kill her. (Ex. 1; Ex. 2.) The minor reported that Defendant had used a needle to give her drugs by injecting her in the arm or back of the neck. (Ex. 1; Ex. 2.) The minor also stated Defendant may have taken pictures of her with his phone, but she did not know for sure. (Ex. 1; Ex. 2.) Agent Mann further reported in her affidavits that the minor stated Defendant used his phone to record her and Defendant having sex. (Ex. 1; Ex. 2.)

Agent Mann reported in her affidavits that the minor disclosed that Defendant used his phone to make posts on www.skipthegames.com. (Ex. 1; Ex. 2.) The minor said Defendant used "Text Free" on his phone to receive messages from the ads. (Ex. 1.; Ex. 2.) Agent Mann's affidavits explain that Text Free is a Voice Over IP service where a user can text and/or make calls using Wifi. (Ex. 1; Ex. 2.) Agent Mann testified that the minor told investigators that Defendant's phone needed to be connected to the internet to work because it did not have cell service. (TR. 26.) The minor said the girls who were posted online did not communicate with the "Johns," and that Defendant just let the girls know when it was time to meet someone. (Ex. 1; Ex. 2.) Agent

Mann testified that the minor wrote down phone numbers, names that she was posted online under, names that other girls were posted online under, other girls that he had posted online, other girls that the minor had been around, and different hotels where she had been. (TR. 18.)

According to Agent Mann's affidavits, the minor also told investigators that for the work of posting girls on the website and texting Johns, Defendant took half the money the girls earned from sex acts. (Ex. 1; Ex. 2.) Agent Mann's affidavits state that the minor reported she did not receive any money from Defendant and if the John paid via Cash App, the John would pay her through her Cash App. (Ex. 1; Ex. 2.) The minor reported she would then transfer half the money to Defendant. (Ex. 1; Ex. 2.) Agent Mann stated in her affidavits that the minor reported that Defendant used his ex-girlfriend's Cash App, which was accessed through Defendant's phone. (Ex. 1; Ex. 2.) According to Agent Mann's affidavits, the minor also said Defendant used Facebook Messenger on his phone to communicate with her friends and other victims. (Ex. 1; Ex. 2.) The minor said the Facebook name Defendant communicated under was "Lisa Lowes." (Ex. 1; Ex. 2.) Agent Mann indicated in her affidavits that a source known to the FBI also stated that he/she communicated with Defendant using the Lisa Lowes Facebook account. (Ex. 1; Ex. 2.)

Agent Mann also offered testimony at the hearing about the minor's phone. Agent Mann testified that the minor reported that Defendant had tried breaking her phone by bending it in half. (TR. 11; TR. 23.) Agent Mann testified that the minor's phone was damaged, but the phone was not seized. (TR. 11; TR. 22.) Agent Mann also testified that the minor showed Agent Mann her phone and Agent Mann saw a message between her and Wilson. (TR. 23.) Agent Mann testified that in the message, the minor and Wilson were talking about how Defendant was mean to the minor and that she was afraid of him. (TR. 23.) Wilson indicated in the message that he was not aware that Defendant was violent with the minor. (TR. 23.) In her affidavits, Agent Mann indicated that a source reported that Defendant and Wilson were pimps trading girls between them. (Ex. 2.) The minor told investigators that Wilson is Defendant's good friend and Wilson was supposed to pay for a date with the minor. (Ex. 2.)

Agent Mann testified that after speaking with investigators, the minor was returned to her guardian, who was a family member, but that the minor ran from her placement the following day. (TR. 8; TR. 19-20.) Agent Mann stated officers had to look for the minor again. (TR. 8.) Agent

4

Mann testified that from June 13th until Defendant's arrest on June 27th, she did not have any further contact with the minor. (TR. 21.) Agent Mann stated that she believed she had probable cause to arrest Defendant on June 13th, but law enforcement was still gathering information and needed to locate Defendant. (TR. 25.) Agent Mann testified that there was no strategic purpose in not getting an arrest warrant or warrant to search Defendant's phone at that time. (TR. 26-27.)

Agent Mann testified that she continued to investigate the case between June 13, 2022 and June 27, 2022. (TR. 8.) Agent Mann stated that during that time, she was actively following postings for prostitution online and following phone numbers and the timing of postings. (TR. 8-9.) Agent Mann testified she was also interviewing witnesses and corroborating information she received from the minor. (TR. 9; TR. 29.) Agent Mann stated that between those two weeks, she observed ads depicting the minor—as the minor told her there would be. (TR. 29.) Agent Mann's affidavits state that an administrator of www.skipthegames.com provided a list of prostitution ads posted by an account holder with the email address loweslisa03@gmail.com. (Ex. 1; Ex. 2.) Agent Mann stated the list of ads included a posting of the minor and at least five other females. (Ex. 1; Ex. 2.) Agent Mann stated that her investigation also revealed numerous other police reports where Defendant, referred to as "Lala," was named as a pimp who was posting females on prostitution websites. (Ex. 1; Ex. 2.) During these previous investigations, none of the victims were willing to testify out of fear for their lives. (TR. 30; Ex. 1; Ex. 2.)

Agent Mann stated that she also received information that Defendant had previously attempted to destroy a phone by bending it during a vehicle stop. (TR. 9; TR. 11.) Agent Mann stated she learned this information from previous Omaha Police Department reports, as well as from an Omaha task force officer who had performed multiple witness interviews involving Defendant's victims. (TR. 10.) Agent Mann testified that during this period, she had reason to believe Defendant had a phone that would allow her to obtain valuable information for her investigation. (TR. 26.)

Agent Mann stated that through the course of her investigation, she discussed Defendant's prior contacts with the Omaha Police Department and a task force officer. (TR. 10.) Agent Mann testified that Deputy Vollmer was involved through basically every step of the investigation into Defendant. (TR. 28-29.) Agent Mann testified that Sergeant Alan Reyes ("Sgt. Reyes") and Deputy Vollmer were both familiar with past investigations concerning Defendant, and that the

investigations were something discussed amongst the task force. (TR. 30.) Agent Mann testified that she was actively meeting with other members of the task force, as well as having discussions with the United States Attorney's Office about the next investigative steps to gather evidence in the investigation. (TR. 29.)

Agent Mann stated in her affidavits that in the spring of 2022, a confidential source of the FBI reported that Defendant and Wilson were staying together at the Travel Inn in Omaha, Nebraska. (Ex. 1; Ex. 2.) Agent Mann stated that the source reported Defendant and Wilson were often seen together there. (Ex. 1; Ex. 2.) According to Agent Mann's affidavits, around that time, it was reported that a "young-looking" female was seen with Defendant. (Ex. 1; Ex. 2.) Agent Mann stated that a picture from surveillance footage was obtained and Agent Mann was able to determine the young-looking female was the minor. (TR. 29-30; Ex. 1; Ex. 2.)

Agent's Mann's affidavits provide that on June 23, 2022, a source known to FBI told investigators that Wilson and Defendant were pimps and that the minor was Defendant's newest girl. (Ex. 1; Ex. 2.) The source was able to describe the minor and provide the minor's street name, which was the same street name that other victims knew the minor by. (Ex. 1; Ex. 2.) The source also provided the names of other victims posted by Defendant. (Ex. 1; Ex. 2.) According to Agent Mann's affidavits, the source reported that he/she was given narcotics by Defendant in exchange for giving prostitutes rides to different locations. (Ex. 1; Ex. 2.) The source also saw Defendant use a needle to inject a female in the arm with what the source believed to be narcotics. (Ex. 1; Ex. 2.) The source stated Defendant told him/her that Defendant used his phone to track the girls who worked for him, so he always knew the girls' locations. (Ex. 1; Ex. 2.)

Agent Mann testified that on June 27, 2022, law enforcement received information that Defendant was leaving the Travel Inn and heading to the New Victorian Inn, which are two hotels that law enforcement knew Defendant frequented. (TR. 9; Ex. 1; Ex. 2) The source had observed the minor with Defendant. (TR. 9.) Agent Mann stated that the task force had talked about arresting Defendant, and then when the source observed Defendant with the minor at the hotel, they decided Defendant needed to be arrested to keep the minor safe. (TR. 25.) Agent Mann testified that law enforcement went to the hotel and saw Defendant in the game room of the New Victorian Inn. (TR. 9; Ex. 1; Ex. 2.) Defendant was sitting in a chair looking at his phone. (Ex. 1; Ex. 2.) According to Agent Mann's affidavits, investigators came into the game room and

Defendant tried to throw his phone onto the floor. (Ex. 1; Ex. 2.) Defendant was taken into custody and booked into Douglas County Corrections on state law charges. (TR. 11; Ex. 1; Ex. 2.) Defendant's phone was taken for evidence by law enforcement. (Ex. 1; Ex. 2.) Sgt. Reyes and Deputy Vollmer were present when Defendant was arrested. (TR. 13-14.) Agent Mann was not present. (TR. 12.)

At approximately 10:00 p.m. on June 27th, the minor was located outside the New Victorian Inn and taken into custody. (Ex. 1; Ex. 2; TR. 9; TR. 20.) The minor had one phone with her at the time which was taken by officers. (TR. 22-23.) Agent Mann testified that law enforcement has not looked at the minor's phone and that the phone is heavily damaged. (TR. 22-23.)

## DISCUSSION

Defendant seeks an order suppressing any information obtained as a result of the search and seizure of his phone on June 27, 2022. Defendant contends the seizure of his phone was not incident to a lawful arrest because the arrest was done without a warrant and without probable cause. Defendant also argues the plain view doctrine is inapplicable because the incriminating character of the phone was not immediately apparent.

1. **Probable Cause for Warrantless Arrest**

"A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause is determined from "the totality of the circumstances as set forth in the information available to the officers at the time of the arrest." *United States v. Adams,* 346 F.3d 1165, 1169 (8th Cir. 2003) (quotation omitted). A warrantless arrest complies with the Fourth Amendment "when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *Adams,* 346 F.3d at 1169. Although mere suspicion of criminal activity is not sufficient to establish probable cause, police are not required to have enough evidence to justify a conviction before they make a warrantless arrest. *United States v. Morales,* 923 F.2d 621, 624 (8th Cir.1991). Also, "[w]hen multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting

7

officer as long as there is some degree of communication." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) (quotation omitted).

"Under the Fourth and Fourteenth Amendments, an arresting officer may, without a warrant search a person validly arrested." *Michigan v. DeFillippo*, 443 U.S. 31, 40 (1979). "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 235 (1973) "[A] search incident to [an] arrest requires no additional justification." *Id*. "As a general matter, in a search incident to arrest, police officers are allowed to search not only an arrestee's person for weapons, but also for evidence, and the scope of the search extends to containers found on the person." *Basham v. United States*, 811 F.3d 1026, 1028 (8th Cir. 2016).

Having considered the matter, the undersigned finds there was probable cause for Defendant's warrantless arrest. By the time Defendant was arrested, the minor had provided detailed information about Defendant and his activities. The minor told investigators that Defendant, who she referred to as "Lala," had raped and threatened to kill her. The minor had also reported that Defendant injected her in the arm and neck with drugs. The minor disclosed that Defendant posted her on www.skipthegames.com and provided information about Defendant's online postings of the minor and other girls. The minor wrote down phone numbers, names that she was posted online under, names that other girls were posted online under, other girls that he had posted online, and other girls that the minor had been around. The minor also told officers that Defendant communicated on Facebook using the name Lisa Lowes. Additionally, the minor provided information about how she and other girls were paid, including Apps used by Defendant to facilitate payment.

Before Defendant was arrested, the minor's statements were corroborated by officers. Agent Mann stated that she found ads depicting the minor—as the minor told her there would be. An administrator of www.skipthegames.com provided a list of prostitution ads posted by an account holder with the email address loweslisa03@gmail.com. Agent Mann stated the list of ads included a posting of the minor and at least five other females. A source known to the FBI stated that he/she communicated with Defendant using the Lisa Lowes Facebook account, which was the Facebook account identified by the minor. Agent Mann's investigation revealed numerous other police reports where Defendant, referred to as "Lala," was named as a pimp who was posting

8

females on prostitution websites. Investigators also spoke to a source who saw Defendant use a needle to inject a female in the arm with what the source believed to be narcotics. Further, Agent Mann had viewed the minor's phone and saw messages between the minor and Wilson indicating that Defendant had been violent with the minor.

In addition to the information received from the minor, investigators obtained reliable information from FBI sources about Defendant's activities. In the spring of 2022, a source reported Defendant and Wilson were staying together at the Travel Inn and that they were often seen together there. It was reported that a "young-looking" female was seen with Defendant. A picture from surveillance footage was obtained, and Agent Mann was able to determine the young-looking female was the minor. On June 23, 2022, a source told investigators that Wilson and Defendant were pimps and that the minor was Defendant's newest girl. The source was able to describe the minor and provide the minor's street name, which was the same street name that other victims knew the minor by. The source provided the names of other victims posted by Defendant. A source also reported that Defendant used his phone to track the girls who worked for him. On June 27, 2022, a source reported Defendant was leaving the Travel Inn and heading to the New Victorian Inn. The source indicated Defendant was with the minor. Defendant was arrested that day at the New Victorian Inn and the minor was later located at that hotel.

Although Agent Mann was not present at the time of Defendant's arrest, the collective knowledge and information possessed by officers supplied the necessary probable cause. Agent Mann testified that throughout her investigation, she discussed Defendant's prior contacts with task force officers and that she was actively meeting with other members of the task force. Agent Mann testified that Deputy Vollmer was involved through every step of the investigation, including being present when the minor was interviewed. Agent Mann testified that Sgt. Reyes and Deputy Vollmer were both familiar with past investigations concerning Defendant, and that the investigation was something discussed amongst the task force. Both Deputy Vollmer and Sgt. Reyes were present when Defendant was arrested.

Based on the totality of the circumstances, there was probable cause to believe Defendant had committed a felony criminal offense, if not a number of felonies, and his warrantless arrest

9

was lawful. Defendant's Fourth Amendment rights were not violated when officers seized his phone during a search incident to this lawful arrest.[1]

### 1. Plain View

Under the plain view doctrine, evidence may be seized without a warrant if the following three conditions are met: "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." United States v. Hughes, 940 F.2d 1125, 1126-27 (8th Cir. 1991) (quotation omitted). The object's incriminating character is immediately apparent "if there is probable cause to associate the property seized with criminal activity." United States v. Newton, 788 F.2d 1392, 1395 (8th Cir. 1986) (quotation omitted). "In determining whether this requirement is met, [a court] may consider the collective knowledge of the officers executing the searches." Id. (citations omitted).

Defendant contends the plain view doctrine is inapplicable because the incriminating nature of his phone was not immediately apparent. This argument is unpersuasive as there was probable cause to associate the phone with criminal activity. At the time the phone was seized, investigators had information Defendant used his phone as an instrumentality of criminal behavior. Officers had information Defendant used his phone to record himself having sex with the minor. Officers also had information that Defendant used his phone to make posts on www.skipthegames.com and that he used "Text Free" on his phone to receive messages from the ads. Agent Mann stated in her affidavits that the minor reported that Defendant used his ex-girlfriend's Cash App, which was accessed through Defendant's phone, to receive payments from the minor and other victims. The minor also reported Defendant used Facebook Messenger on his phone to communicate with her friends and other victims. Defendant also used his phone to track the girls working for him. Given the information known to investigators at the time, the seizure of Defendant's phone was lawful.

Accordingly,

---

[1] Defendant's phone was not searched until a search warrant for the phone was obtained.

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Robert Rossiter, Jr. that Defendant's Motion to Suppress (Filing No. 60) be denied.

Dated this 20th day of April, 2023.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

A party may object to a magistrate judge's findings and recommendation by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. Failure to timely object may constitute a waiver of any objection.